HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIFFANY JANE HARRISON

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. C05-5146RBL

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the court on the Plaintiff's Motion for Partial Summary Judgment, seeking adjudication in her favor of a subset of the Defendants Affirmative defenses [Dkt. # 8]. Defendants have cross-moved for Summary Judgment on all of plaintiffs claims [Dkt. #11].

**1.    Factual Background**.

Despite the complexity of the legal issues and arguments presented by the parities' motions, and of the factual background presented in the materials, the facts of this dispute are not seriously contested.

Briefly, the case involves Plaintiff Harrison's purchase of Puyallup tribal property at a foreclosure sale. Harrison, a registered Puyallup, had previously taken an assignment of a 1994 Deed of Trust on the Property. The Deed of Trust was executed by her predecessor, Hargrove, to his lender, BFC, in 1994. The Deed was recorded in Pierce County but was not at that time recorded, as required under Federal law, with the Bureau of Indian Affairs (BIA) title plant in Portland, Oregon.

In 1995, Hargrove entered into two leases with Emerald Outdoor Advertising, TO FACILITATE

Emerald's construction of two billboards on the Property, which is adjacent to Interstate 5 in Fife. These Leases were approved by the BIA and were duly recorded with the BIA title plant in 1995. They were not recorded in Pierce County.

In 1997, it was apparently discovered (by someone not a party here) that Hargrove's initial Deed of Trust had not been properly recorded, and the Deed of Trust was recorded at the BIA Title Plant. In 2001, Plaintiff Harrison secured the beneficial interest in the Deed of Trust. The Assignment was recorded in Pierce County, but not at the title plant. The following day, Hargrove sought protection in the bankruptcy court. In 2002, Hargrove defaulted on his Note and Plaintiff Harrison began non-judicial foreclosure proceedings against the Property. She subsequently purchased the Property at the Trustee's sale. The Property was conveyed by Trustee's Deed to the United States (because the Property is part of the Puyallup Nation), in trust for the Plaintiff on June 6, 2002.

Plaintiff claims she "had reason to believe" that her interest in the property was superior to Emerald's Leases, and that those Leases were terminated by her foreclosure. She sought to evict Emerald from the Property and to obtain quiet title to the land. After lengthy litigation that is more familiar to the parties than this court, it was ultimately determined that the Emerald Leases had priority over Harrison's claim to the Property, based on the fact that the Leases were recorded with the BIA prior to the Deed of Trust. The district court decision so holding was dated June 24, 2004.

In September 2004, plaintiff Harrison filed an administrative tort claim with the Department of Interior and the BIA, alleging that the BIA had a duty to record the original Deed of Trust and that she had been injured by the BIA's failure to do so. The claim was denied, and this suit followed.

Plaintiff claims that the BIA was negligent in failing to "promptly record" the Deed of Trust at the BIA Title Plant in 1994, and that that failure caused her $1.5 million in damages. She sues under the Federal Tort Claims Act (FTCA).

Plaintiff Harrison seeks summary adjudication that the following affirmative defenses asserted by the defendants are not valid: This court does not have subject matter jurisdiction over the Plaintiff's claims (First Affirmative Defense); the Plaintiff has not asserted a claim upon which relief may be granted (Second), and the FTCA's two year limitations period bars Plaintiff's claims (Ninth).

Defendant's Response includes its own Motion for Summary Judgment. Defendant argues that the

court does not have subject matter jurisdiction over the Plaintiff's claims, because it has not waived its sovereign immunity under the Federal Tort Claims Act (FTCA). It argues that the duty Plaintiff claimed was breached is purely federal and that Plaintiff's claim must be brought under the "Tucker Act," in the Court of Claims.  Finally, and in any event, Defendant argues that Plaintiff cannot show that she was a bona fide purchaser, injury or causation.

**2. Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**3. Analysis**

**A.    The FTCA's requirement of a state law duty.**

Defendants first argue that this court does not have jurisdiction over the subject matter of this case because the United States has not waived it sovereign immunity.  It argues that in order for the FTCA's waiver to be triggered, there must be a finding that a private person would be liable under state law in similar circumstances.  Such a showing, it argues, is a prerequisite to the assertion of a federal claim under the FTCA.  *See* 28 U.S.C. §§2674 and 1346(b); *Bush v. Eagle-Picher Industries, Inc.*, 927 F.2d 445 (9th Cir. 1991). Emphasizing the uniquely federal relationship between the United States and sovereign Indian nations, Defendants argue that there is not (and cannot be) a state law duty analogous to the federal recording requirements imposed on the BIA.

Plaintiff does not concede[1] that she is required to demonstrate a state law duty, but argues that she has done so. She cites RCW 5.40.050, "negligence per se" as the source of this duty. That statute makes the violation of a statute evidence of negligence. A Federal Regulation (25 C.F.R. §150.6) imposes on the BIA the duty to record "title documents" at the BIA title plant. Plaintiff argues that this duty was breached and that Washington law makes the "negligence" actionable.

However, as the Defendants correctly point out, negligence per se statutes do not create a duty, they instead establish a standard of care. *See Delta Savings Bank v. U.S.*, 265 F.3d 1017 (9th Cir. 2001) ("In other words, the negligence per se doctrine does not do away with the requirement in FTCA cases that the *duty* must be created by state law; it only establishes the standard to which the defendant's conduct must conform."). Defendant further argues that the only state law provision "analogous" to 25 CFR §150.6 is RCW 65.08.070, which provides that one *may* record interests in real property, and explains that third parties who take without the constructive knowledge provided by recording take free of the interest. It is, of course, for this latter reason that the beneficiaries of conveyances of real property – lenders, tenants, and buyers – insist, usually in their contracts, that the conveying party (or the title company) record their interests. There is no statutory duty to do so, but in virtually all cases there is a contractual duty to record.

In any event, Plaintiff argues in response that the analogous state law duty is provided not by RCW 65.08.070, but by RCW 68.05.150, which imposes a duty upon the recording officer to record conveyances submitted to him for recording. She cites a number of related state statutes imposing and describing the duties of a recording officer.

The problem with this line of argument is that these statues are not analogous to the federal

---

[1] In addition to arguing that the she has demonstrated the violation of a duty derived from state law, Plaintiff argues that the FTCA does not require her to do so where an agency has violated its own regulations. She cites *Appley Bros. v. U.S.*, 7 F.3d 720 (8th Cir. 1993) for the proposition that the government can be sued for violating its own regulations, even where there is no applicable state statute defining the government's duty to the plaintiff. This case does not stand for that proposition; it does not in fact address the existence or necessity of an analogous state law duty.
   She also argues that *Zimmerman v. U.S.*, 171 F. Supp.2d 281, 293 (S.D.N.Y. 2001), provides authority for the maintenance of FTCA cases based on the violation of federal statutes. However, *Zimmerman* stated only that some Circuits have held that "in cases brought under the FTCA, *if the federal law has a state analogue*, claims based on a breach of a federal statutory can be maintained." (Emphasis added.)

ORDER
Page - 4

regulation at issue here. At the risk of oversimplifying, the federal rules related to the transfer of Indian property are that the BIA must approve of the transfer and the BIA must promptly record an approved transfer at the BIA title plant. Under state law, the parties to a transaction typically do not need approval from some government entity to convey interests in land, and the government does not require them to record any such transfer. If they (wisely, from the beneficiary's perspective) choose to do so, the recording officer at the appropriate county recording office is under a statutory duty to record the conveyance at the time it is submitted to him for that purpose.

The schemes are not analogous, and, as the government points out, even if they were, the place of recording is conflicting. The federal scheme related to the transfers of Indian properties, including mortgages and forfeiture, to a limited extent adopts state law. However, as the District Court in the prior litigation found, that adoption is not complete, and the recording scheme mandated by the federal regulations is not meant to duplicate the state scheme. Instead, the federal BIA recording scheme "is intended to operate in lieu of [the] state . . system." [*See* Whalen Dec. at Ex. C, p. 9]. It therefore preempts the state recording scheme, and it alone must serve as the Plaintiff's basis for any duty to record. There is no state law duty to record.

Therefore, the Plaintiff has not demonstrated the requisite waiver of sovereign immunity and her FTCA claim is not properly before this court. Her Motion on the applicability of the Defendant's First and Second Affirmative Defenses is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

**B.    Any Breach of Duty did not Damage Harrison as a Matter of Law.**

Though the above analysis is dispositive, the Court is also compelled to address what is the more substantive problem with the Plaintiff's claim. Regardless of the proper jurisdiction for her claim, and regardless of its timeliness, the Plaintiff cannot, as a matter of law, demonstrate that any breach on the part of the United States caused her any damage.

As the Defendant argues, the plaintiff in a negligence action must prove duty, breach, damages and proximate cause. See, for example, *Schooley v. Pinch's Deli Market, Inc.*, 134 Wn.2d 468, 951 P.2d 749 (1998). The details of the Plaintiffs' acquisition of the assignment in 2001 are not emphasized by the parities. The plaintiff claims that at that time she "had reason to believe" that the Emerald Leases were subordinate to the Deed of Trust she was receiving.

1  Plaintiff Harrison does not contend that she was the recipient of any incorrect or deficient
2 information about the status of the title she purchased, and acknowledges that she had constructive, if not
3 actual, knowledge of that recording chronology at the time she acquired her interest in the Property. She
4 apparently has no misrepresentation or breach of contract claim against her seller, her title insurer, or
5 whatever other entity was the source of her "belief" that that chronology was beneficial to her. She
6 certainly does not allege that the BIA made any representation to her about the status or effect of the
7 recording chronology.

8  Instead, Harrison purchased exactly what she obtained – her damage (if indeed she has suffered
9 any) is the result of her own mistaken belief as to the legal significance of the fully disclosed and fully
10 known title recording chronology. Indeed, it is likely (though not determinative) that the price she paid
11 reflected that title status. Plaintiff has not cited, and the court is not aware of, any case suggesting that the
12 ancient cause of a particular title status is the proximate cause of damage allegedly suffered by one who,
13 knowing of that status, wrongly assumes or gambles that that status is beneficial to her. The 1994 failure
14 to record was not the cause, logically, factually, or proximately, of the plaintiff's loss as matter of law.

15  Even if Plaintiff could otherwise assert a federal FTCA claim, she could not prevail on the
16 undisputed facts of this case. Her Motion for Summary Judgement [Dkt. #8] is therefore DENIED, and
17 Defendant's Motion for Summary Judgment [Dkt. #11] is GRANTED. The Plaintiff's Complaint is
18 dismissed.

19  DATED this 2nd day of September, 2005

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE